IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| WILSON ANGEL JACOBO TAY,<br>*Petitioner*,<br>v.<br><br>DAVID VENTURELLA, *et al*.,<br>*Respondents*. | 1:26-cv-2342-MSN-WEF |

ORDER

Wilson Angel Jacobo Tay ("Petitioner") has filed a two-count Petition for Writ of Habeas Corpus ("Petition") under 28 U.S.C. § 2241, in which he asserts that he has been illegally detained by the U.S. Department of Homeland Security's ("DHS") Immigration and Customs Enforcement ("ICE"). ECF 1. Specifically, Petitioner alleges that his current detention violates his due process rights (Count I) and the Immigration and Nationality Act ("INA") (Count II).

Petitioner is currently detained at the Caroline Detention Facility in Virginia. On July 31, 2026, this Court ordered the Federal Respondents to respond to the Petition. ECF 2. The Federal Respondents filed their opposition on August 6, 2026. ECF 7. The Petitioner filed a reply in support of his Petition on August 11, 2026. ECF 8. The Court finds that the Federal Respondents' detention of the Petitioner is unlawful. Accordingly, the Court will grant the Petition.

## I. BACKGROUND

Petitioner is a citizen of Guatemala. ECF 7-1 ¶ 5. On May 14, 2013, Customs and Border Protection officers encountered Petitioner near the southern border. *Id.* ¶ 6. Petitioner was served with a notice of expedited removal and removed back to Guatemala on May 27, 2013. *Id.*

On December 2, 2018, ICE agents encountered Petitioner at the Chesapeake City Jail after he was detained for a DUI. *Id.* ¶ 7. Shortly thereafter, ICE took Petitioner into custody and issued

him a notice of intent to reinstate his prior order of removal. *Id.* Petitioner was then criminally indicted under 8 U.S.C. § 1326, convicted, and served a sentence of time served. *Id.* He was then returned to ICE custody following his release on April 12, 2019. *Id.*

Petitioner claimed a fear of returning to Guatemala and was referred to USCIS for a reasonable fear interview. *Id.* ¶ 8. On May 11, 2019, USCIS issued a notice of referral to an immigration judge to place Petitioner in withholding only proceedings. *Id.* On July 5, 2019, Petitioner was released from custody on bond. *Id.* ¶ 9. Petitioner was scheduled for a master calendar hearing for February 12, 2020. *Id.* Petitioner failed to appear for the master calendar hearing and was ordered removed *in abstentia*. *Id.* ¶ 10. That order was later rescinded, and Petitioner was granted withholding of removal to Guatemala on August 1, 2025. *Id.* ¶ 10; ECF 1-2.

There apparently was no contact between Petitioner and the Federal Respondents for months thereafter, and Petitioner was neither detained nor put on any order of supervision. ECF 7-1 ¶ 10. Six months later, on February 17, 2026, ICE notified Petitioner of an in-person appointment scheduled for March 3, 2026. *Id.* ¶ 11. Federal Respondents do not explain how Petitioner was notified of this appointment, and Petitioner alleges he never received such a notice despite ensuring that Federal Respondents had his current address. *Id.*; ECF 8-1 ¶¶ 3-8. Federal Respondents both sent letters to and called Petitioner's obligor to request Petitioner be presented. ECF 7-1 ¶ 11. Federal Respondents do not explain whether those communication attempts were successful. *Id.* Petitioner alleges that his obligor was a past partner, and that he did not have contact with her at this time. ECF 8-1 ¶¶ 10-12. He further alleges that he did not receive any notice of the March appointment from her. *Id.* ¶¶ 13-14.

On June 25, 2026, ICE encountered Petitioner in during a targeted enforcement action. ECF 7-1 ¶ 12. Petitioner was driving to work when officers stopped his car, broke the window, and pulled him from the vehicle. ECF 8-1 ¶¶ 15-16. Petitioner was detained at that time. ECF 7-1 ¶ 12. That same day Petitioner was issued a warrant for arrest of removal, a notice of removal to Mexico, a warning for failure to depart, a warning to alien ordered removed or deported, a warrant of removal/deportation, and Petitioner's bond was cancelled. *Id.* Petitioner was later transported to Louisiana, and Federal Respondents allege he refused to board a bus to depart the facility for removal to Mexico. *Id.* ¶ 13. Petitioner alleges that he never refused to be removed from the United States, but instead that he refused to sign documents before speaking with his attorney. ECF 8-1 ¶¶ 22-29. Petitioner was later transported to Texas, then back to Louisiana, and eventually to Virginia. ECF 8-1 ¶ 21. On July 30, 2026, Petitioner was served with a failure to comply memo, informing him that he had failed to comply with 8 C.F.R. 241.4(g) for his failure to board transportation on July 10, 2026. ECF 7-5.

Petitioner filed the instant habeas Petition on July 30, 2026. ECF 1.

## II. ANALYSIS

The central question in this Petition is whether or not the Federal Respondents can detain Petitioner under 8 U.S.C. § 1231.

As an initial matter, it appears that Petitioner's current detention is governed by 8 U.S.C. § 1231. Section 1231 applies to aliens that are "ordered removed," and Petitioner was originally ordered removed on May 27, 2013, and was issued a decision reinstating that prior order of removal on December 11, 2018. 8 U.S.C. § 1231 ("Detention and removal of aliens ordered removed"); ECF 7-2. His order of removal was therefore "reinstated from its original date" and

Petitioner could have been "removed under the prior order at any time after the reentry." 8 U.S.C.A. § 1231(a)(5).

Section 1231 generally provides that when noncitizens are issued an order of removal, they are subject to mandatory detention and required to be removed within 90 days, a time frame known as the "removal period." *See* 8 U.S.C. § 1231(a)(1)(A) ("Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days."); 8 U.S.C. § 1231(a)(2)(A) ("During the removal period, the Attorney General shall detain the alien."). Petitioner was initially detained by the U.S. Marshals due to his criminal illegal reentry case but continued to be detained by ICE after his time was served in that case. ECF 7-1 ¶¶ 7-8. His removal period therefore started on April 12, 2019, when he was returned to ICE custody. ECF 7-1 ¶ 7; 8 U.S.C.A. § 1231(a)(1)(B) ("If the alien is detained or confined (except under an immigration process), the [beginning of the removal period starts when] the alien is released from detention or confinement."). That ninety-day removal period has long since expired, and Federal Respondents eventually released Petitioner from custody on bond on July 5, 2019. ECF 7-1 ¶ 9. Because Petitioner's mandatory detention during the removal period expired, Federal Respondents instead suggest that Petitioner's current detention is justified under 8 U.S.C. § 1231(a)(1)(C). ECF 7 at 7-8. Section 1231(a)(1)(C) allows for an extension of the removal period in specific circumstances. It provides:

> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.
>
> 8 U.S.C. § 1231(a)(1)(C).

For reasons similar to this Court's previous decision in *De La Cruz Lopez*, this Court finds that 8 U.S.C. § 1231(a)(1)(C) only applies to immigrants currently in detention – it does not apply

to immigrants previously released by the Federal Respondents. *De La Cruz v. Mullin*, No. 1:26-cv-1931, 2026 WL 2199760 (E.D. Va. Jul. 28, 2026). This Court starts, as it must, with the language of the statute. Section 1231(a)(1)–(2) defines the removal period as a ninety-day period. Section 1231(a)(1)(C) then provides that in certain scenarios the removal period "shall be extended beyond" that time, and that in doing so the alien "*may remain in detention*". 8 U.S.C. § 1231(a)(1)(C) (emphasis added). It therefore allows for extension of the removal period, and thus continuation of detention, for immigrants that are *already in detention*. It does not contemplate extending the removal period for people, like Petitioner, who were previously released from custody.

Indeed, the text of the regulations that operationalize 1231(a) confirm this result. 8 C.F.R. § 241.4 governs the "[*c*]*ontinued detention* of inadmissible… aliens *beyond* the removal period." (emphasis added). It describes the scope of the authority to "continue" an alien in custody and explains that certain officials "*may continue* an alien in custody beyond the removal period described in section 241(a)(1) of the Act pursuant to the procedures described in this section." 8 C.F.R. § 241.4(a) (emphasis added). The regulations further re-iterate that the removal period can be extended in instances of alien bad faith or conspiracy to prevent removal, and in those instances the notice of failure to comply will be provided to the alien "*before* the expiration of the removal period." 8 C. F. R. § 241.4(g)(1)(ii) (emphasis added); *see also id.* at § 241.4(g) (titling this section: Travel documents and docket control for aliens *continued in detention*") (emphasis added). It explains that "[r]elease will be denied and the alien may remain in detention" in circumstances of bad faith or conspiracy to prevent removal, thus allowing for mandatory detention past the removal period. *Id.* at § 241.4(g)(5). As such, Section 1231 provides for the limited extension of the ninety-day removal period to allow for the *continued mandatory detention* of aliens refusing to make

timely applications in good faith for travel or otherwise conspiring to prevent their removal. It does not contemplate allowing the government to re-detain an alien that has previously been released from custody. In conclusion, 8 U.S.C. § 1231(a)(1)(C) does not allow the government to detain Petitioner.

Instead, Federal Respondents were required to properly revoke Petitioner's bond before detaining him. As explained by this Court in *Santos Modesto Orellana-Escobar v. Lyons*, in the situation of a Petitioner released on bond pursuant to Section 1226(a) following the class action order in *Diaz v. Hott*, 297 F. Supp. 3d 618 (E.D. Va. 2018), "procedural due process requires that Federal Respondents observe [8 CFR § 241.4] in re-detaining Petitioner." No. 1:26-cv-349, ECF 10 at *6 (E.D. Va. Mar. 23, 2026).[1] Section 241.4 provides process for revocation of release, including revocation as a result of a violation of conditions of release. Because it appears Petitioner was arrested and his bond cancelled without any explanation or opportunity to respond, his due process rights were violated and he must be released.

## III. CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that the Petition is GRANTED; it is further

ORDERED that Federal Respondents immediately release Petitioner with all his personal property subject to the conditions of his existing bond; it is further

ORDERED that the Federal Respondents, along with their officers, agents, servants, employees, attorneys, successors, and assigns, and all persons acting in concert with them—are ENJOINED from re-detaining Petitioner unless (1) he commits a violation of any federal, state, or

[1] Indeed, such process appears to be particularly important here where there are factual disputes between the Parties that could affect the outcome of a revocation proceeding.

local law; (2) he fails to comply with the conditions of bond; or (3) done so in compliance with the requirements of 8 C.F.R. § 241.4.

**IT IS SO ORDERED.**

The Clerk is directed to enter judgment in Petitioner's favor pursuant to Federal Rule of Civil Procedure 58, forward copies of this Order to counsel of record, and close this civil action.

/s/
Michael S. Nachmanoff
United States District Judge

August 18, 2026
Alexandria, Virginia